UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| VIRGEN M. AYALA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:16-cv-30009-KAR |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER
(Dkt. Nos. 15 & 23)
March 27, 2017

ROBERTSON, U.S.M.J.

I. Introduction

On January 13, 2016, plaintiff Virgen M. Ayala ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) against the Acting Commissioner of the Social Security Administration ("Commissioner"), appealing the denial of her claims for Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI"). Plaintiff asserts that the Commissioner's decision denying her such benefits – memorialized in an April 15, 2015 decision by an administrative law judge ("ALJ") – is in error. Specifically, Plaintiff alleges that the ALJ erred by not assessing the severity of her tendonitis of the elbow and not finding it to be severe and by not granting a treating physician's assistant's opinion controlling weight when assessing her RFC. Plaintiff has moved for judgment on the pleadings requesting that the Commissioner's decision be reversed, or, in the alternative, remanded for further proceedings (Dkt. No. 15). The

Commissioner has moved for an order affirming the decision of the Commissioner (Dkt. No. 23). The parties have consented to this court's jurisdiction (Dkt. No. 14). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the following reasons, the court will deny Plaintiff's motion and allow the Commissioner's motion.

II. Procedural Background

Plaintiff applied for SSI and SSDI with a protective filing date of July 11, 2013, alleging a March 1, 2010 onset of disability due to asthma, bacterial infection, hip pain, tendonitis, and high blood pressure (Administrative Record ("A.R.") at 17, 227-38, 247, 262). Plaintiff's applications were denied initially and on reconsideration (*id*. at 136-49, 155-60). Plaintiff requested a hearing before an ALJ, and one was held on March 31, 2015, at which time Plaintiff claimed disability due to arthritis and osteoarthritis in her back, hands, neck, and leg, tendonitis of the elbow and arms, tinnitus, bilateral sensory hearing loss, and asthma (*id*. at 72-99, 161-62). Following the hearing, the ALJ issued a decision on April 15, 2015, finding that Plaintiff was not disabled and denying Plaintiff's claims (*id*. at 11-28). The Appeals Council denied review on November 19, 2015, and the ALJ's decision became the final decision of the Commissioner (*id*. at 1-10). This appeal followed.

III. Legal Standards

A. Standard for Entitlement to Social Security Disability Insurance

In order to qualify for SSI and SSDI, a claimant must demonstrate that she is disabled within the meaning of the Social Security Act.[1] A claimant is disabled for purposes of SSI and SSDI if she "is unable to engage in any substantial gainful activity by reason of any medically

[1] For SSDI, the claimant also must demonstrate that the disability commenced prior to the expiration of her insured status for disability insurance benefits. *See* 42 U.S.C. § 423(a)(1).

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 42 U.S.C. § 423(d)(1)(A). A claimant is unable to engage in any substantial gainful activity when she "is not only unable to do his previous work, but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work." 42 U.S.C. § 1382c(a)(3)(B); 42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates a claimant's impairment under a five-step sequential evaluation process set forth in the regulations promulgated under each statute. *See* 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520. The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or equals a listed impairment contained in Appendix 1 to the regulations; (4) whether the impairment prevents the claimant from performing previous relevant work; and (5) whether the impairment prevents the claimant from doing any work considering the claimant's age, education, and work experience. *See id*. *See also Goodermote v. Sec'y of Health & Human Servs*., 690 F.2d 5, 6-7 (1st Cir. 1982) (describing the five-step process). If the hearing officer determines at any step of the evaluation that the claimant is or is not disabled, the analysis does not continue to the next step. 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520.

Before proceeding to steps four and five, the Commissioner must make an assessment of the claimant's "residual functional capacity" ("RFC"), which the Commissioner uses at step four

to determine whether the claimant can do past relevant work and at step five to determine if the claimant can adjust to other work. *See id*. "RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

The claimant has the burden of proof through step four of the analysis, *Goodermote*, 690 F.2d at 7, including the burden to demonstrate RFC. *Flaherty v. Astrue*, 2013 WL 4784419, at *9 (D. Mass. Sept. 5, 2013) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). At step five, the Commissioner has the burden of showing the existence of other jobs in the national economy that the claimant can nonetheless perform. *Goodermote*, 690 F.2d at 7.

B. Standard of Review

The District Court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner, with or without remanding for rehearing. *See* 42 U.S.C. § 1383(c)(3); 42 U.S.C. § 405(g). Judicial review "is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000). The court reviews questions of law *de novo*, but must defer to the ALJ's findings of fact if they are supported by substantial evidence. *Id*. (citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999)). Substantial evidence exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion.'" *Irlanda Ortiz v. Sec'y of Health & Human Servs*., 955 F.2d 765, 769 (1st Cir. 1991) (quoting *Rodriguez v. Sec'y of Health & Human Servs*., 647 F.2d 218, 222 (1st

Cir. 1981)). In applying the substantial evidence standard, the court must be mindful that it is the province of the ALJ, and not the courts, to determine issues of credibility, resolve conflicts in the evidence, and draw conclusions from such evidence. *Id.* So long as the substantial evidence standard is met, the ALJ's factual findings are conclusive even if the record "arguably could support a different conclusion." *Id.* at 770. That said, the Commissioner may not ignore evidence, misapply the law, or judge matters entrusted to experts. *Nguyen*, 172 F.3d at 35.

## IV. Discussion

### A. The Evidence

#### 1. Medical Records[2]

On March 27, 2009, Plaintiff went to Mercy Medical Center emergency room complaining of radiating left elbow pain with movement, but no pain at rest (*id.* at 439). She reported that the pain had been intermittent over the previous two months (*id.*). On examination, Plaintiff's epicondyles were tender to palpation with pain on flexion and extension, but her strength was full and her handgrip was strong (*id.* at 439). An x-ray of her elbow was negative for fracture (*id.* at 440). The treating physician's assistant suspected epicondylitis, prescribed Percocet and ibuprofen, and advised Plaintiff to follow-up with her primary care provider (*id.*).

On April 30, 2009, Plaintiff's primary care provider referred Plaintiff to Donald Griger, M.D., at the Arthritis Treatment Center based on Plaintiff's report of experiencing left "tennis elbow" pain for three months that was not helped by nonsteroidal anti-inflammatory drugs (NSAIDs) (*id.* at 382-83). Dr. Griger saw Plaintiff on May 6, 2009, at which time Plaintiff stated that her left elbow pain radiated up and down her arm, was mild while at rest and worsened with

[2] There is evidence that Plaintiff has been diagnosed with depression and anxiety, but she has not alleged any mental functional limitations, and her arguments on appeal concern only her physical condition. The summary of evidence is limited accordingly.

activity, and benefitted to some degree from medication (*id*. at 366-67). Dr. Griger's physical examination of Plaintiff was normal, and he diagnosed Plaintiff with left lateral epicondylitis and left upper and lower arm pain and recommended physical therapy, exercise, and a splint (*id*.).

On May 22, 2009, J. Lewin, a physical therapist at the Arthritis Treatment Center, evaluated Plaintiff (*id*. at 377-78). Lewin's physical examination of Plaintiff's left arm revealed tenderness in the left lateral elbow, reduced strength but normal range of motion, and spasm upon palpation (*id*.). Lewin's plan of care included iontophoresis and exercise, with short-term goals of education and elbow stretching and long-term goals of increasing strength and activities of daily living (*id*.). Plaintiff participated in eight sessions of physical therapy between May 26, 2009 and June 29, 2009 (*id*.). At the final session, Plaintiff was still reporting left elbow pain, and she was advised to follow up with Dr. Griger (*id*.).

Plaintiff met with Dr. Griger on July 6, 2009 and reported that she was continuing to experience left elbow pain, along with mild intermittent left shoulder pain (*id*. at 362). Plaintiff advised that she had not experienced significant benefit from physical therapy, brace usage, or medication (*id*.). Upon physical examination, Dr. Griger noted that Plaintiff had reduced strength in her left arm, but the results were otherwise normal (*id*. at 363). Dr. Griger diagnosed Plaintiff with continued left lateral epicondylitis and mild shoulder bursitis and indicated that she should follow-up with her primary care provider to consider an orthopedic consultation (*id*. at 362). He did not note any work-related restrictions (*id*.).

Plaintiff saw Dr. Griger again on August 20, 2009, and reported ongoing left elbow and shoulder pain, and she still exhibited reduced strength in her left arm (*id*. at 358-59). Dr. Griger diagnosed Plaintiff with chronic left lateral epicondylitis with no help from non-surgical

treatment options, as well as mild shoulder bursitis (*id*.). He again recommended that Plaintiff follow up with her primary-care physician to consider an orthopedic consultation (*id*.).

Plaintiff did not see Dr. Griger again until March 14, 2011, at which time she reported that she had been experiencing left lateral elbow pain for more than two years (*id*. at 356-57). Physical examination of Plaintiff's musculoskeletal examination was normal, and Dr. Griger diagnosed Plaintiff with chronic left lateral epicondylitis that did not respond to non-surgical treatment options and once again recommended that Plaintiff discuss an orthopedic consultation with her primary care provider (*id*.). He did not assess any work-related restrictions (*id*.).

Plaintiff returned to Dr. Griger on August 8, 2011, and her examination was normal except for reduced lower extremity reflexes (*id*. at 352-53). Dr. Griger reiterated his recommendation that Plaintiff pursue an orthopedic consultation to review surgical treatment options (*id*.).

Plaintiff established primary care at Northgate Medical, P.C. on August 3, 2011, and on December 13, 2011, she had "no complaints" (*id*. at 450). Plaintiff was seen by Luis Vicioso, M.D. of Northgate on January 20, 2012, following an emergency room visit for a right ankle sprain reportedly resulting from a fall (*id*. at 449). Dr. Vicioso advised Plaintiff to continue to wear an air cast for 10-14 days, which presumably had been provided to her in the emergency room, and prescribed oxycodone and Motrin for pain (*id*.). Plaintiff returned to Dr. Vicioso on February 3, 2012, at which time she reported that the medications were partially relieving her pain, and, by March 19, 2012, Plaintiff reported that she was feeling "much better" (id. at 447-48).

Plaintiff next saw Dr. Vicioso for "on/off" left elbow pain on July 27, 2012 (*id*. at 452, 445). Dr. Vicioso noted that Plaintiff's left elbow was tender to palpation, and he diagnosed her

with left elbow tendonitis and prescribed tramadol as needed (*id*.). Dr. Vicioso also completed a "Certificate of Chronic Serious Illness," and included left elbow tendonitis, along with diabetes mellitus, dyslipidemia, vitamin D deficiency, hypertension, and goiter (*id*. at 381).[3]

On September 13, 2013, Plaintiff was evaluated by Thu Nguyen, a physician's assistant at Northgate (*id*. at 547-49). Plaintiff reported no localized joint pain at the time, and examination of Plaintiff's musculoskeletal system showed normal movement of all extremities (*id*.). Nguyen assessed Plaintiff as having hypertension, hyperlipidemia, obesity, and Type 2 diabetes mellitus (*id*.).

Plaintiff met with Nguyen again on November 18, 2013, at which time she was complaining of bilateral hand and finger pain for the past few weeks, which increased with movement (*id*. at 542-46). Plaintiff reported that she had a history of arthritis and denied taking any pain medications (*id*.). Nguyen's examination revealed abnormalities to her fingers and tenderness to palpation (*id*.). Nguyen added arthralgia (i.e. pain in a joint) of the right and left hands to Plaintiff's assessments (*id*.). He prescribed Tylenol Arthritis 650 mg and recommended that Plaintiff exercise three times a week and undergo a follow-up examination in three months (*id*.).

Plaintiff underwent an initial consultation and examination at Valley Chiropractic & Rehabilitation on May 20, 2014 (*id*. at 567-69). In a "pain drawing," she indicated that she felt pain in her neck, lower back, hands, left knee, and right foot, which she rated a 10 for "unbearable" (*id*. at 569). On examination, Plaintiff exhibited decreased passive range of motion with tenderness to palpation in her cervical and lumbosacral spine and moderate hypertonicity in

[3] The single page form, in addition to requesting information about the "Nature of Chronic Serious Illness," sought the "Customer's Name and Address" and "Gas & Electric Account No.," suggesting that it bore some relationship to one of Plaintiff's utility accounts (*id*. at 381).

the muscles (*id*. at 567-68). She was diagnosed with cervical and lumbosacral segmental dysfunction, cervicalgia, backache, and myalgia and myositis (*id*.). It was recommended that she return for chiropractic treatment three times per week for four weeks (*id*.). The short term treatment goals were to reduce Plaintiff's pain by 30-50% with a measurable decrease in other symptoms within four to six weeks, and the long term goals were for Plaintiff to be able to walk as far as she wanted without increased pain, stand for several hours with no pain, and undertake personal care without pain or with maximally improved pain in eight to twelve weeks (*id*.). Plaintiff underwent six chiropractic treatment sessions between May 20 and June 3, 2014 (*id*. at 561-68). Plaintiff reported that the therapy felt good after the first session, that she thought it was helpful after the second, and that her headaches were improving after her third (id.). On June 3, 2014, Plaintiff reported only that her lower back was sore, and the chiropractor noted that she was progressing as expected (*id*.).

Plaintiff met with Nguyen again on June 18, 2014 (*id*. at 576-81). Plaintiff reported lower back and neck pain, as well as right hand pain, which she indicated was stable (*id*.). Nguyen noted that Plaintiff's hands showed no abnormalities, but that her cervical and lumbosacral spine showed abnormalities and tenderness to palpation (*id*.). Nguyen assessed Plaintiff as having hypertension, hyperlipidemia, obesity, Type 2 diabetes mellitus, and arthritis (*id*.). Nguyen continued Plaintiff on Tylenol Arthritis 650 mg, provided a referral for pain management, and recommended that Plaintiff continue to exercise three times per week and follow-up in three months (*id*.).

Plaintiff underwent a pain assessment at Baystate Health Pain Management Center on September 9, 2014 (*id*. at 630-31). Plaintiff reported a 10-year history of low back and right leg

pain, which she rated a four on a scale of one to ten (*id*.). Plaintiff was offered a return appointment for a physical examination and discussion of treatment options (*id*.).

Plaintiff met with Nguyen for a follow-up examination on September 18, 2014 (*id*. at 589-593). Plaintiff reported that she was still experiencing back and neck pain, as well as right hand pain, which Plaintiff again reported was stable (*id*.). Examination of Plaintiff's musculoskeletal system revealed no abnormalities and normal movement of all extremities (*id*.). Nguyen assessed Plaintiff with hypertension, hyperlipidemia, obesity, Type 2 diabetes mellitus, arthritis of the hand, neck pain, and back ache (*id*.). He advised Plaintiff to follow-up with a chiropractor for her back and neck pain and recommended exercise four times per week with a follow-up in three months (*id*.).

Plaintiff met with Nurse Practitioner Pamela Slagle at Northgate on December 18, 2014 (*id*. at 644-46). Plaintiff reported that she was feeling well and reported no recent changes to her medical history (*id*.). Slagle assessed Plaintiff as having hypertension, hyperlipidemia, and Type 2 diabetes and recommended follow-up in three months (*id*.).

On February 16, 2015, Plaintiff met with Nguyen to request a referral to the Arthritis Treatment Center for pain in her hands, knees, and back (*id*. at 647-650). Review of systems indicated back pain and pain localized to one or more joints (*id*.). On physical examination, Nguyen noted tenderness to palpation of the upper and lower extremities and back (*id*.). Nguyen assessed Plaintiff with arthritis and arthralgia in multiple sites and prescribed acetaminophen (*id*.).

2. Opinion Evidence

On March 4, 2014, Birenda Sinha, M.D., issued his assessment, finding that the evidence did not document any severe impairments (*id*. at 102-08). With regard to Plaintiff's elbow pain,

Dr. Sinha noted that it had been treated with cortisone injections, and no recent medical records documented an elbow problem (*id*. at 106).

Robert McGan, M.D., reviewed the updated evidence of record on July 22, 2014, and he agreed with Dr. Sinha's assessment of no severe impairment, including tendonitis (*id*. at 116-124). By this time, Plaintiff was also alleging arthralgia of her hands severe enough that she was unable to hold things (*id*.). Dr. McGan noted that the June 18, 2014 treatment notes indicated that Plaintiff had no hand abnormalities (*id*. at 122). While she had some tenderness to palpation of her neck and lower back, there was no evidence of any functional impairment of her upper or lower extremities and her gait was normal (*id*. at 122-23). The November 18, 2013 treatment notes showed some tenderness to palpation of the fingers on both hands, and she was diagnosed with arthralgia, but without functional limitations (*id*. at 123).

On August 12, 2014, Nguyen wrote a single-page "To Whom It May Concern" letter regarding Plaintiff's medical conditions (*id*. at 603). He identified Plaintiff's diagnoses as osteoarthritis, low back pain, and neck pain (*id*.). He then stated, "[d]ue to these medical conditions, patient has functionallimitations [sic] to work related to heavy physical activities such as walking, standing, lifting, carrying and handling heavy object [sic] over 10 pounds" (*id*.).

3. Plaintiff's Testimony

Plaintiff was 59 years old at the time of her hearing (*id*. at 75). She completed the tenth grade, and her primary language is Spanish (*id*. at 76, 87-88). Her primary work experience has been that of an assembler and a cleaner (*id*. at 77-78, 94-95).

Plaintiff testified that she cannot work full-time because of her age and pain in her lower back and hands (*id*. at 78-79). According to Plaintiff, her lower back pain is worse if she walks, stands, or sits too much, and she specified that sitting for five to six hours would be too much (*id*.

at 80). Plaintiff testified that she can walk three to four blocks before needing to stop, sit for two-and-a-half to three hours before needing to get up, and stand for 30 minutes before needing to sit down (*id*. at 83-84). Plaintiff testified that her fingers do not close properly, especially in the mornings, and she has difficulty picking up and holding things (*id*. at 81-82). Plaintiff denied difficulty with zippers, buttons, or opening small jars, however (*id*. at 82). Plaintiff also testified that she has pain in her neck that comes and goes and pain in her leg (she did not specify which one) that is constant (*id*. at 82). According to Plaintiff, she can lift and carry no more than 10-20 pounds comfortably (*id*. at 84). Plaintiff reported a tendency to lose her balance and fall (*id*. at 82). Plaintiff stated that she experiences intermittent ringing in her ears, as well as occasional bleeding in her ears with loud noises (*id*. at 84-85). She testified that she experiences asthma symptoms when she is in dirty, dusty, or smoky environments (*id*. at 85).

4. Vocational Expert's Testimony

The vocational expert (VE) testified that a hypothetical individual of Plaintiff's age, educational background, and work history, with an RFC for light work,[4] in an environment with no concentrated exposure to hazardous conditions such as unprotected heights and dangerous machinery, and with only occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs, and no climbing ladders, ropes, and scaffolds, could perform Plaintiff's past relevant work as an assembler and a cleaner (*id*. at 95-96). An inability to communicate in English would not preclude such work (*id*.). If the hypothetical individual were

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking and standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567 (b).

to be off-task twenty percent of the workday or were to miss three or more days of work per month, the individual could not perform competitive work (*id*. at 97-98).

B. The ALJ's Decision

To determine whether Plaintiff was disabled, the ALJ conducted the five-part analysis required by the regulations. At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 1, 2010 (*id*. at 19). At the second step, the ALJ found that Plaintiff had a severe impairment, osteoarthritis, and noted Plaintiff's additional alleged impairments of diabetes mellitus, low back pain, neck pain, depression, anxiety, and insomnia (*id*. at 19-20). The ALJ did not mention tendonitis of the elbow at step two. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*id*. at 21). Before proceeding to steps four and five, the ALJ found that Plaintiff had the RFC to "perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but she should never climb ladders, ropes or scaffolds. The claimant must avoid concentrated exposure to hazardous conditions such as unprotected heights and dangerous machinery" (*id*. at 21). In formulating Plaintiff's RFC, the ALJ noted Plaintiff's March and August 2011 treatment records for her left lateral epicondyle and that she had been diagnosed with left elbow tendonitis (*id*. at 22). At step four, the ALJ determined that Plaintiff was able to perform her past relevant work as an assembler and a cleaner (*id*. at 23). Therefore, the ALJ found that the Plaintiff was not disabled (*id*. at 23).

C. Analysis

1. Plaintiff's Tendonitis of the Elbow

Plaintiff's first argument on appeal is that the ALJ erred by not assessing the severity of her tendonitis of the elbow and by not finding it to be a severe impairment. As set forth above, step two of the sequential evaluation process requires the Commissioner to determine whether a claimant possesses a severe impairment. *See* 20 C.F.R. § 416.920(a)(4)(ii); 20 C.F.R. § 404.1520(a)(4)(ii). It is not enough for a plaintiff to be diagnosed with an impairment. *Grady v. Astrue*, 894 F. Supp. 2d 131, 141 (D. Mass. 2012). "A mere diagnosis of a condition 'says nothing about the severity of the condition.'" *White v. Astrue*, No. 10-10021-PBS, 2011 WL 736805, at *6 (D. Mass. Feb. 23, 2011) (quoting *Higgs v. Bown*, 880 F.2d 860, 863 (6th Cir. 1988)). For an impairment to be "severe," a plaintiff must provide evidence that it significantly limits his or her physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 416.920(c); 20 C.F.R. § 404.1520(c).

Here, the evidence establishes that Plaintiff sought treatment for left elbow pain in 2009, before her March 1, 2010 alleged onset of disability, and was diagnosed with left lateral epicondylitis that did not benefit from non-surgical treatment options (A.R. at 358-59, 362-63, 366, 377-78, 382-83, 439-440). At the time of her diagnosis, Plaintiff was still working in an office cleaning job (*id*. at 78). As observed by the ALJ, Plaintiff sought treatment for continued left elbow pain after her alleged onset of disability, in March and August 2011, at the Arthritis Treatment Center (*id*. at 22, 352-53, 356-57). She also sought treatment on July 27, 2012, with Dr. Vicioso of Northgate, at which time Plaintiff reported "on/off" left elbow pain with a history of steroid injection and physical therapy (*id*. at 445). Dr. Vicioso noted that Plaintiff's left elbow was tender to palpation, diagnosed her with left elbow tendonitis, and prescribed tramadol as needed (*id*. at 445). There is no evidence that Plaintiff sought any treatment for left elbow pain

at any time subsequent to this appointment.[5] Dr. Sinha, the state agency physician, took this into consideration, specifically highlighting the lack of any recent medical records documenting an elbow problem, when he opined that Plaintiff did not suffer from any severe impairments, including relating to her elbow (*id*. at 102-108). Plaintiff's testimony at the March 2015 hearing did not include reference to any pain in her elbow.

This evidence does not support a finding that Plaintiff's left elbow condition was a severe impairment. Plaintiff did not present any evidence that pain in her left elbow caused any limitations in her ability to perform basic work activities. She was working at the time of diagnosis, and Dr. Griger did not identify any work-related restrictions. The claimant testified that she could comfortably lift 10 to 20 pounds. Moreover, the absence of records regarding treatment for Plaintiff's left elbow at any time after July 27, 2012, and the lack of testimony from Plaintiff regarding elbow pain are both consistent with the ALJ's conclusion that Plaintiff's left elbow condition was not a severe impairment. *See Kosinski v. Astrue*, No. 10-30097-KPN, 2011 WL 3678836, at *4 (D. Mass. Aug. 19, 2011) (noting that "lack of or gaps in medical treatment may be considered evidence when determining the severity and scope of a disability," as can a lack of testimony from the plaintiff about a condition).

Nor does the analysis change because the ALJ failed to specifically mention Plaintiff's history of left elbow pain at step two of his analysis. The ALJ subsequently discussed Plaintiff's treatment for her left elbow in his RFC assessment, demonstrating that he considered the evidence relating to it in determining whether Plaintiff was disabled as required. 20 C.F.R. § 416.929(a); 20 C.F.R. §404.1529(a). *See also White v. Colvin*, No. CA 14-171 S, 2015 WL

[5] An August 10, 2012 record notes "elbow pain" as a continuing condition, but the purpose of the visit was to follow-up on an emergency room visit for a rash, and the physical examination did not include the elbow (*id*. at 444).

5012614, at *1, 8 (D.R.I. Aug. 21, 2015) (adopting a recommendation to affirm the decision of the commissioner where the ALJ failed to discuss whether the plaintiff's mood disorder was a severe impairment at step two, but discussed the mood disorder in the RFC analysis). Moreover, even if the ALJ did err in not finding that Plaintiff's left elbow tendonitis was a severe impairment, the error would be harmless because the ALJ found that Plaintiff's osteoarthritis was severe, and he took into consideration all of Plaintiff's impairments when assessing her RFC, again as required. 20 C.F.R. § 416.945(a)(2); 20 C.F.R. § 404.1545(a)(2). *See also Noel v. Astrue*, No. 11-cv-30037-MAP, 2012 WL 2862141, at *6 (D. Mass. July 10, 2012) (holding that even if the ALJ erred at step two, any such error was harmless where the ALJ considered all of the plaintiff's impairments, severe and non-severe, when assessing RFC); *Grady v. Astrue*, 894 F. Supp. 2d 131, 142 (D. Mass. 2012) (same).

2. PA Nguyen's Opinion

Plaintiff's second argument on appeal is that the ALJ erred by not granting controlling weight to the opinion of Nguyen, her treating physician's assistant at the Arthritis Treatment Center, as reflected in Nguyen's August 12, 2014 "To Whom It May Concern Letter" (A.R. at 603). In the letter, Nguyen states that Plaintiff "has functionallimitations [sic] to work related to heavy physical activities such as walking, standing, lifting, carrying and handling heavy object [sic] over 10 pounds" (*id*.). The ALJ gave "little weight" to the opinion, explaining that he found it to be "not supported by the medical evidence of record, [Nguyen's] own records, and [Nguyen] is not an acceptable medical source under the regulations" (*id*. at 22). The ALJ also noted that the state agency physicians "reviewed Plaintiff's records for around the same time frame, and concluded her medically determinable impairments were non-severe and disclosed no functional limitation" (*id*.).

"[An ALJ] must give controlling weight to the opinion of a 'treating source' when that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with substantial evidence in the record." *Taylor v. Astrue*, 899 F. Supp. 2d 83, 87 (D. Mass. 2012) (*Taylor I*) (citing 20 C.F.R. § 416.927(c)(2)). *See also* 20 C.F.R. § 404.1527(c)(2). A "treating source" is an "acceptable medical source," as that term is defined by the regulations. *See* 20 C.F.R. § 416.927(a)(2); 20 C.F.R. § 404.1527(a)(2). A physician's assistant is not included in the regulation's description of an "acceptable medical source." *See* 20 C.F.R. § 416.913(a); 20 C.F.R. § 404.1513(a). Instead, a physician's assistant is an "other source" whose opinion is not "presumptively entitled to controlling weight." *Taylor v. Colvin*, Civil Action No. 15-30183-KAR, 2016 WL 6778214, at *4 (D. Mass. Nov. 15, 2016). *See* 20 C.F.R. § 416.913(d)(1); 20 C.F.R. § 404.1513(d)(1) ("other sources" include "[m]edical sources not listed in paragraph (a) of this section (for example … physicians' assistants …")). *See also* *Anderson v. Colvin*, Civil No. 14-cv-15-LM, 2014 WL 5605124, at *5 (D.N.H. Nov. 4, 2014) ("Only 'acceptable medical sources' can be considered treating sources whose medical opinions are entitled to controlling weight.") (citing SSR 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006)). Thus, Nguyen is not an acceptable medical source under the regulations, as noted by the ALJ in his decision, and his opinion was not entitled to controlling weight.

As "other source" evidence, the ALJ had broad discretion in weighing Nguyen's views as expressed in the letter. *Gagnon v. Astrue*, No. 1:11-cv-10481-PBS, 2012 WL 1065837, at *5 (D. Mass. Mar. 27, 2012). An ALJ need only "adequately explain his treatment of the [other source] opinion so that a reviewer can determine if the decision is supported by substantial evidence." *Taylor I*, 899 F. Supp. 2d at 88-89 (footnote omitted). As set forth above, the ALJ did so here. He explained that Nguyen's opinion as stated in the letter was inconsistent with Nguyen's own

records, which show a lack of symptoms and objective findings both before and after the letter, on September 13, 2013 and September 18, 2014 (A.R. at 547-49, 589-93). It is also inconsistent with Dr. Griger's normal examination on March 14, 2011, in which he assessed no work-related restrictions (*id*. at 356-57). Finally, it is inconsistent with the opinions of the two state agency physicians, both of whom assessed Plaintiff as having no functional limitations (*id*. at 102-08, 116-124). An additional reason for the ALJ to assign little weight to Nguyen's opinion as expressed in the letter is that it provides no specific functional limitation with respect to Plaintiff's ability to walk or stand. *See Carr v. Astrue*, No. 09cv10502-NG, 2010 WL 3895189, at *9 (D. Mass. Sept. 30, 2010) ("[T]he ALJ was … right to minimize [the doctor's] opinion because she offered little assessment of specific functional capabilities."). Thus, the ALJ did not err in his treatment of Nguyen's opinion.

V. Conclusion

For the reasons stated, Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) IS DENIED, and the Commissioner's motion for an order affirming the decision (Dkt. No. 23) IS GRANTED.

It is so ordered.

/s/ Katherine A. Robertson____
KATHERINE A. ROBERTSON
United States Magistrate Judge